Good morning, Your Honors. This is Steve Havacek, Federal Defenders, on behalf of Amicus Curiae Federal Defenders. Mr. Landry has indicated to me that he's wanted to defer all of his time to me, so I'm just going to proceed. Your Honors, I read… I see. So Mr. Landry is just here, as it were, listening. Yes. Yes, Your Honor. I'm waiting to catch whatever mistakes I make. Okay. Your Honors, I read Aguilar-Montes de Oca as setting up what I've described and what Mr. Landry and I have described as an indispensable fact test, so that if the prior conviction could not have been entered without the fact that's at issue in the subsequent proceeding, then it doesn't qualify under the Aguilar-Montes test. So under that analysis, the prior conviction here fails as an aggravated felony for two reasons. Number one, it was not necessary to the prior conviction that the conduct that Mr. Aguilar-Turcios was involved in meet the federal test for child pornography, specifically the one derived from 2256, which has five specific criteria, sexual intercourse, bestiality, masturbation, sadistic or masochistic abuse, or lascivious exhibition of the genitals or pubic area of any person. That was not required in the prior conviction of Mr. Aguilar-Turcios. In fact, the military judge, and it's at page 196 of the administrative record, describes sexually explicit conduct as conduct that is plainly or clearly involving sexual activity, the organs of sex, the instinct, drive, or behaviors associated with sexual activity. Those two are not the same definition. So you cannot say that it was necessary to the prior conviction that the federal standard under 2256 be satisfied. Let me, Mr. Hubbard, just let me, there's, the whole process of, you know, of a court, here we have a court-martial, of determining whether somebody is pleading guilty, properly pleading guilty to a particular charge. You know, one of the things that the judge has to do is make a finding that there's an adequate factual basis. Correct. Okay. So here there was a stipulation of fact that everybody agreed to. Yes, Your Honor. Now, the facts weren't delineated by the two charges, the article 92 and the article 134, correct? Well, the military judge did go through them. Well, no, but if you, is it, is it fair to say, let me ask you this. Is it fair to say that there was a sort of a general stipulation of the factual basis, or were the facts sort of attributed to the basic charges that were in play? I think that they were attributed to the basic charges. And I would point to pages 197 to 200 of the colloquy. At page 199, the military judge explained that what we were talking about with the count one, which was the article 92, was visiting porn sites rather than downloading. In fact, he initially said downloading and then corrected himself to say visiting. So he made it very clear that we were talking about something different than what was going on in the article 132 prosecution. And then on 199 to 200, that's when the military judge gave Mr. Aguilar-Turcios the non-child porn definition of pornography. That's perhaps not an elegant way of putting it. But he gave him a different definition of what constituted pornography that had nothing to do with children, minors, or sexually explicit conduct. And so, as I understand Aguilar-Montes, at that point, that was a sufficient factual basis for that crime. So nothing more was necessary. What's the difference between downloading and visiting there on page 199? Well, I think that downloading was used as the sort of possessory element of the second charge. So I think that accessing indicates that there was a different type of conduct that they were talking about. And is there a difference in our jurisprudence between downloading and accessing or visiting? I don't know that it's considered to be possession. Are you familiar with the ROM case? You know, actually, Your Honor, I don't know that case, so I don't want to give Your Honor the wrong answer. But I don't know. But I do know this, that the question as to whether or not a particular photograph is lascivious under the federal standard is a jury question. And that is a fact that was not resolved in the context of this litigation in the military courts because the federal definition was not used. Yeah. Now, here's a question that is not entirely clear to me from the record what's meant. I think it's possible to, quote, visit a pornographic site without actually seeing any pornographic pictures. That is to say, I think it's possible to come to a site that has as its splash page, this is a pornographic site, are you over 18, yes or no? And only when you click yes do you then begin to see pictures. I think that's the case. So he's charged with and pleads guilty to visiting a site, which doesn't necessarily even mean that he's seen any pictures. I think as a practical matter of probability, he did. But if I'm just talking sort of what the word visiting a site means, I don't think that necessarily includes seeing pictures. I would agree with that. But I don't have anything that spells that out on the record for me. Right. And since the government bears the burden by clearing convincing evidence, I think that that benefits Mr. Aguilar-Turcios. Ultimately, they're the ones that are obliged to show that this is an aggravated felony. And I think that if the colloquy had just stopped at page 200 between the military judge and Mr. Aguilar-Turcios and they just decided to drop the other count, that would have been a sufficient factual basis because he admitted everything that the military judge put before him. And I think that because that was sufficient at that point, we can't go any farther under the Aguilar-Montes de Oca test. Is 134 before us in any way? No, it's not, because the government didn't appeal from that, from the determination of the immigration judge that that count didn't qualify. But he pled to 134. He did. And are we allowed to look at what he pled to in terms of understanding what 92 might mean? I don't think so for a couple of reasons. Number one, under the reason that I've described how I read Aguilar-Montes de Oca, but also I think that this case. What in Aguilar? Let me stop you there. Sure. The two specific quotes that I'm relying on, at page 937, it says, if the defendant could not have been convicted of the offensive conviction unless the trier of fact found the facts that satisfy the elements of the generic crime, then the fact finder necessarily found the elements of the generic crime. Well, I just don't think that there's any argument that Mr. Aguilar-Turcios could not have been convicted under Article 92 without the child pornography admissions. Second, also at page 937, the Court said, not enough that an indictment merely allege a certain fact or the defendant admit to a fact, the fact must be necessary to convicting that defendant. And, again, if there had been a fire drill after the admission on the Article 92 and the proceeding never resumed, that would have been a valid conviction without ever discussing the child pornography. Under the Article 92, had he been accessing adult pornographic sites, which he admitted in his interview with the investigating officers, had he only been accessing adult pornography, that, of course, would be sufficient. Right. And all that's necessary is that he be accessing some kind of pornography, whether it's adult or child. Now, the fact that the only pornography that he has admitted to, that he specifically admits to accessing is child pornography and is colloquially over 134, the fact that it's child pornography, of course, it wouldn't be necessary to a conviction under 92, but it surely is sufficient to support the conviction under 92. Well, what was sufficient was what he said, which was that I accessed pornographic sites. And so at that point, there was no other fact that was necessary. Except that we know, counsel, we really do know that at the time that he's accused, that the time period for which he's accused under 92 and on the computer that he used, that he was accessing child pornography. We really can't dispute that, can we? Well, I dispute it because there's no evidence in this record that the – Even though the dates are precise and the serial number on the computer is precise, you don't know that he was accessing child pornography? If we're talking about child pornography as defined under 2252 and 2256, no, there's nothing in this record that shows that. Well, okay. There is no doubt that he said that he was accessing child pornography and that he knew that these were children under the age of 18. Correct. Whether the definition satisfies a little different question, but there's no question that for the time encompassed by the Article 92 conviction and the computer that he was using, that he was accessing what he said was child pornography. Right, under the nonconforming definition. When you say under the nonconforming definition, spell out what you mean by nonconforming definition. I mean the definition provided by the military judge, which is different than the federal definition. And can you read me that definition? Yes, Your Honor. And where's it coming from? It's from page 196 of the administrative record. Okay, hang on a second. Okay, I'm on page 196, yep. Okay. You know, I've learned in the past I can just read from the page rather than read from my notes. Yeah, I think that's a good idea. I think I might have learned that with Your Honor. Okay, sexually explicit conduct is conduct that is plainly or clearly involving sexually, well, that's a misprint, activity, the organs of sex, or the instinct, drives, or behavior associated with sexual activity. And that definition is not the same as the very specific five criteria that are laid out in 2256. And so to use the language of Aguila Montes de Oca. Okay, let me pick this one apart. Sure. I'm just now reading this definition. So he's looking at, we'll assume for the moment that he's looking at pictures of sexually explicit conduct, even let's assume for purposes of the question sexually explicit conduct involving minors, that the definition of sexually explicit conduct, pictures of which he is looking at, is in the disjunctive. So if he pleads to looking at pictures of sexually explicit conduct of minors, it's sufficient that it's something that illustrates instincts associated with sexual activity. Right. Instincts associated with sexual activity is an awfully broad term. Right, Your Honor. In the briefing, I suggested kissing would satisfy it. Well, I think maybe even just looking longingly at another little girl by a little boy. I don't know. I agree. It's extremely broad. Do we have any idea where this definition came from? Your Honor, I did a Westlaw search for both the all feds and the military justice system, and I never came up with a source for it. I think he just seemed to have made it up as he was going along. It could be. They seem to have a fairly standard definition of pornography to use, so it may be. But one point that I hadn't made in response to one of the original questions about why we can't sort of put the two offenses together is there's also the Eleventh Circuit case, and I don't know how to pronounce it, Jagernoth, that is basically very similar to this one. That case, they had a nonconforming definition of theft in which you could do it either by depriving the person of the use of their property or in some other nonqualifying way. So it was effectively a divisible statute. And in that case, they wanted to use the simultaneous conviction for resisting a merchant to show that the theft conviction actually involved the requisite intent. And the Eleventh Circuit just flatly held you can't do that under Taylor and under the Immigration Code. I guess what I was getting at with my original question, Mr. Hubchuck, was that, you know, when you take a plea and the defendant either agrees to a written set of facts or the defendant sort of, you know, make him orally state what they did, it may say a lot more than is necessary. And in making these determinations here on the modified categorical approach, I mean, do you disregard the extra statements that a defendant might make when pleading guilty? Yes. And I think that's what Aguilar Montes de Oca actually says. I'm not finding the exact quote right now, but it says that not only does it have to be alleged and admitted, but it has to be necessary. And that's where, you know, the prior convictions here fall. Your Honors, I've got about a minute left. I have another minute, and I'll ask the Chief to give you whatever time that you need. Sure, sure. On the overbroad definition, back to the question of instinct drives and behavior being overbroad, is any of the pornography that Mr. Aguilar admitted to viewing in the record? Yes. Okay. Does it involve kissing? No, it does not, Your Honor. Okay. Does it involve other kinds of what we would term sexually explicit conduct as we would use in ordinary conversation? The photographs are in the record, and they are one-person photographs. They're thumbnail sketches, not sketches, thumbnails that I guess you would download. I couldn't tell you exactly what is depicted in them, but I can tell you that they would create a jury question under federal law that he would be entitled to a jury trial on. And I think that you cannot say that he had every incentive to defend under the federal standard when that wasn't what was being done. Were they actually in the administrative record before the IJ? Yes. Or are they only in the court-martial record attached as exhibits? Because attached to the transcript is identification of the photograph. They're numbered by exhibit letters. Yes. I don't recall seeing them, but maybe I just overlooked them. I think they are in the certified administrative record, I believe they are. Yes, yes, they are, Your Honor, in the record that I was provided there and there. I can give you the page numbers when I come back up for rebuttal. No, I mean, don't worry about time. We'll make sure you get a chance to respond. Okay. In what form are they in the record? Does it say, does he say, I looked at those pictures, or are they in the record in the sense that that's part of a charge for 134 or a charge for 92? I mean, what's the status in the record of the picture? Your Honors, what happened was is that after the plea colloquy was done and then the convictions were accepted, then the parties moved to a sort of sentencing hearing, and the military prosecutor offered the several exhibits, one of which was the photographs and the other two of which were the statements that were attributed to Mr. Aguilar-Turcios. The pictures are at pages 236 to 238 of the administrative record, and page 212 is where the prosecutor offers the exhibits and they're admitted. And is there an admission, either explicit or implicit, by the defendant that these are the pictures that he, in fact, looked at? That was not covered in the context of the plea colloquy, but I don't think that there is. They're referred to as part of the sentencing discussion? Yes, Your Honor. What the sentence should be? Yes, Your Honor. But they're in the same colloquy in which the plea was taken. It's after the plea. Right, but it's contemporaneous with. It's the same hearing. This is page 212 and the plea was taken at page 200. So we're in the same hearing and this is where he says these are relevant to spec 1 of charge 2, which would be the 134 charge. It's the same hearing. I mean, but it's after the pleas were accepted and it wasn't in any way necessary. And there's no objection to their admission? There is. There is an objection by the defense. There is an objection or there is no objection? There is an objection. The objection, Leslie, only as to being cumulative. No objection as to authenticity and hearsay, sir, only as to it being cumulative. It essentially reiterates everything that Lance Corporal Aguilar-Turcios has said during Providency. That is the defense's only objection, sir. That objection is overruled. Okay. Let's hear from the government and we will give you a chance to respond. Thank you, Your Honor. Good morning, Your Honor. May it please the Court, my name is Andrew McLaughlin and I represent the Respondent Attorney General of the United States in this case. There is no need to go beyond or create special rules or do anything beyond the Aguilar-Montes case in this case. In this case, the defendant specifically admitted and was found guilty of a child pornography offense, specifically using the terminology directly out of the Federal statute. And that's where that terminology must have come from. There is no other place that terminology came from in the charge. Although the definition doesn't appear. It doesn't match up at all. The sexually explicit conduct, those three words appear in the statute. But the definition that the MJ gives him isn't found in the statute. Exactly. Let me make a couple of points about that, because I'm actually surprised we've even reached that stage here. First of all, this argument wasn't raised at all before the immigration judge, the board, or to this Court in the original case. It was waived at that stage. But more importantly, we're talking about the definition of sexually explicit activity, which was an element of the offense, the Article 134 offense, to which he pled guilty. Mr. Aguilar-Churcios himself, prior to the judge's instruction on the definition, had already pled, had already provided a statement, a stipulation of fact that, in fact, used those words, and the charge used those words, and there's no indication in the record that any of those words were based on an incorrect definition. But the more important point here is, because it was an element of the offense of which he was convicted, and he did not challenge it at trial, and this case was automatically appealed to the appeals court because it was a punitive discharge, and either the immigration judge was correct, which is possible in a number of different ways. It could just be that the transcript was wrong where it says or, and he, in fact, said and, or something like that. But more likely it's because the error was harmless or because Mr. Aguilar-Churcios waived that argument. We're talking about the, the actual conviction. This conviction is a conviction that's. Which conviction are we talking about? The, the. You're talking about 134? Article 134. Are you talking about 134 or are you talking about 192? The definition of. What's the basis, what's the basis for his removal? The basis for his removal is then, is the Article 92 charge. That's the only charge. And that's the only issue before us, correct? No, Your Honor.  The petition. I mean, his basis for removal is, was 92. Petitioner is asserting. Is that an aggravated felony? Petitioner is asserting to you that you, that he's not removable based on this incorrect definition of sexually explicit activity. If that were true, Petitioner waived that. It's a collateral attack on his conviction itself. Let me, so I started off my questioning by asking Mr. Hubachek about the statement of fact, the stipulation of fact. Yes, Your Honor. Right? Okay. So here, the way they laid it out was charge one, violation of UCMJ Article 92. And they very carefully delineated the factual basis for 92. Yes, Your Honor. Correct? Absolutely. Nothing in there about child pornography, right? Absolutely. Then they go down to 134, and they very specifically delineate the facts to support 134. That's correct. And that's where we get the child pornography. That's absolutely right. So you didn't cross-appeal the IJ's dismissal of 134, correct? That's correct. So the only thing really, we're focusing on 92. That's correct. Now, isn't the only way you can get to the child porn is to put the two together? Yes and no. Like Judge Bybee just went through. As Judge Bybee described, as the board did, and its description as the immigration judge, its description is one way. That is, if you take the Article 92 charge as having an element of pornography and a finding of pornography and child pornography as a subset, and a specific subset, and these two incidents are, in fact, identical incidents, then it's the only specific kind of pornography that you can describe. That is one way to do it. The other way that I want to point out, because it really hasn't been discussed more fully, is if you examine the Article 92 charge itself, Article 92 is extraordinarily broad. Yes. The general order itself is the joint ethics regulation, which is itself a vast regulation. It has many different prohibitions. The prohibition we're talking about here is a specific prohibition dealing with the use of government computer systems. And the prohibition is not against pornography. The prohibition is against doing things that discredit the Department of Defense. Such as pornography. And that's what it says. It says such as pornography. Such as pornography and gambling. Correct. And there's a series of other examples. But the actual element of that offense is using a computer in a way that discredits the Department of Defense, just like the charge in 134. So we're actually talking about extremely similar charges here. The element that we're looking at in both cases is exactly the same. When you say both cases, again, you're talking about 92 and 134. Both charges. But I'm having problems. I think your answer to Judge Paez was the only way we can turn Article 92 conviction into child porn is looking at what happened under 134. No. Well, how can you do that without? Let's take 134 entirely off the table. We know nothing about what was said with respect to Article 134. How do we know with respect to the conviction under 92 that he pled guilty to view or possessing child porn? Under Aguilamontes, you look at the elements of offense that he was charged with. And then you look at what conduct was found to satisfy that element of offense. Okay. I'm looking at the charge. I've got the charge under 92 in front of me. He wrongfully used a government computer to obtain access to pornographic Internet sites. That's the charge. And he pleads to that. Correct. How do we know that there was child porn? You look at the element that's required to be found, and that is either, if you want to call it pornography, you can call it pornography. If you want to call it service discrediting conduct, call it service discrediting conduct. Well, no. The charge is access to pornography. So that's the charge to which he pled. He didn't plead to the broader. It's a violation of that order, which requires service discrediting conduct. And an example of that is pornography. And he specifically pled obtain access to pornography Internet sites. Okay. Once you have that element, you're looking for something that satisfies anything that satisfies that service discrediting element, you then look at what it was that Mr. Aguilar-Torres gave you to satisfy that element. Wait a minute. Why do you look to that? Because that's the only way you're going to determine what he actually pled to. Yes, but the only thing he pled to is this. He says, yes, I obtained access to use the government computer to obtain access to government pornographic Internet sites. That's it. That's enough for the conviction. Isn't that right? Take the hypothetical use. No, and let me ask you this. Isn't it right that it's enough for the conviction that he has this charge and he says, yes, I'm guilty of that? Yes, Your Honor. Counsel, if all we had was the colloquy up to page two-thirds of the way down page 200 and the plea colloquy had stopped there, we wouldn't know whether Mr. Aguilar-Torres had accessed adult pornographic sites or child pornographic sites, would we? Because accessing adult pornographic sites would have been sufficient for a conviction under Article 92. I would say no. You're actually wrong in that, Your Honor. We already had the stipulation of fact in the record. The military judge had already asked the accused to adopt that stipulation of fact as his testimony in the Providency Inquiry.  Let's go to the stipulation. I'm looking at the stipulation, which starts on page 269. Where in the Article 92? This is a misconception that we seem to be laboring under. Facts are facts. The military judge could use any fact in this document at any point with respect to any charge. It was laid out in terms of Article 92 and Article 134 to simplify the inquiry of the judge. I have a record on this one. And I thought that the 134 had to be patched into the 92 in order to be able to make sense of this. Now, you're arguing that 92 stands on its own. So I'm taking your argument at face value now, trying to figure out how you get there. So if I'm looking at the stipulation as to 92 only, tell me how we get there. The entire stipulation, every fact in the stipulation of fact is fact with respect to both charges. Well, I mean, you know, they were very careful here. That's why I said, you know, when you take a plea, when you take a plea, you need to make sure that there's an adequate basis to support the charges. Yes, Your Honor. Right? And there's certain facts will support certain charges, and certain facts are necessary for other charges. They were very careful here in the way they did this. 92 apparently was pretty easy for them to establish. Correct? Yes. When you get to 134, they're very specific. I mean, they talk about one picture, one image, I guess it is, with respect to his friend's computer. Yes, Your Honor. And then with the government computer, they talk about six. They were very specific in the way they did this. Yes, Your Honor. The gravelman of child pornography is great, and, in fact, the maximum. I mean, this wasn't, you know, sometimes you see the way you take a plea as a defendant. You just ask, what did you do? Tell me what you did. You will not see that in the military justice system, sir. What did you do? And I want to know. I want you to tell me why you're pleading guilty and what did you do. And then the judge can say, well, there's an adequate factual basis here to support your plea to both these charges. In some cases. It's not what they did here. In some cases. They went through very specifically and they laid out exactly what he did in order to justify a plea to 92. I would invite you to look at the military law on this subject. The reason that the military system is so much easier than other systems to deal with is because the military judge is required to do those things. Go through. Even if the defendant has already conceded his provider's stipulation fact, even if the defendant has already conceded the charge and described what it was that he thinks, the military judge goes through each and every element with the defendant. That doesn't mean that what was said at some other time is any less relevant. You know, counsel, if you look at the acknowledgement and waiver of rights, which is the statement that he made to the officers on July 18, 2002, I don't think that's a Shepard document. Am I right on that? That is correct. Okay. So it's not a Shepard. It's not a Shepard document. But it's interesting because it does sort of give us some background for this. And there Mr. Aguilar-Turcios goes through sort of his history, that he started looking for Britney Spears and Jennifer Lopez pictures, and then he started going into adult porn, and then he got into child pornography. So that's all sort of helpful for us to understand the context. And it may also explain why the military was willing to give a broader charge on the Article 92 rather than the 134. That is, it was a much easier charge to prove, because all they had to do was prove that he had at least accessed adult charges. Now, in the end, Aguilar-Turcios is willing to plead guilty to both of them. He is not going to contest either one of them. But the Article 92 conviction certainly would have been supported merely by the fact that he had accessed adult pornography sites. It would have been. But in this case, you have him characterizing his course of conduct as a single course of conduct. And he did that to try to minimize the significance of the total course of conduct. That is, all I did was click on the image, and up came an image of child pornography. And that's how it got downloaded. That's how he possessed it, was the same act of accessing it was the act of downloading it and possessing it. And that's what he's trying to do, is minimize his conduct. That's his incentive to testify correctly about this. So he is, in fact, characterizing it as the same. But my problem remains, if we take 134 off the table, and we're not allowed to look at what he pled to with respect to 134, and we're only allowed to look to appropriate documents for the modified categorical approach that are relevant to the charge to which he did plead that's been appealed, 92, I just don't see that what he pled to necessarily tells us that he possessed child porn. He accessed, which is different from viewing and possessing, adult pornography. So we've got problems at two levels. Number one, we can't show child porn, and we can't even show viewing. All we can show is access. We can't even show possession. We can't show possession. So I don't know how you get me under 92 to showing that this is an aggravated felony. A showing of child pornography would have satisfied Article 92. I don't think anybody disagrees with that. Well, of course it would have. That's not in the question. The question is whether that's what he pled to when he pled to 92. But that's not what he pled to. One of the documents that is permitted to be considered is the stipulation effect. And I'm looking at it right now. And his characterization of what he did was, I did the same thing. I did one set of acts. Wait a minute. Wait a minute. Tell me where he says that. I'm on page 270 for 92. Does he say I did anything about I did the same thing? No. No. But under Pike, the stipulation of all of the facts and the stipulation of facts are facts with respect to all of the charges. You can't distinguish the two in that case. If it's ‑‑ and I'm making an if here. And this is what was actually ‑‑ But here's my problem when you're saying I've got to look at the entire stipulation of facts. The only charge that I'm looking at, the only charge that's relevant, the only charge that's the basis for his removal is 92. No, Your Honor. The stipulation of facts. Why do you say no? Why do you say no? The only basis for his removal is the charge for 92. Is that correct? Yes. And every fact in the stipulation of facts could be considered by the military judge in convicting him under Article 92. Every fact. But that's absolutely not necessary for the military judge to have the conviction under 92. And that's why Aguilamantes indicates that you have to look at what the defendant actually gave the military judge to determine what the military judge found violated the elements of the offense. You know, I just don't ‑‑ It looks to me like what the military judge found in order to determine whether he violated Article 92 was that he had ‑‑ he used a government computer to access pornographic Internet sites. I believe that the stipulation of facts provides you the specification that he ‑‑ that among those sites was child pornography. And that can be considered. On the other hand, you also have the fact that you have a conviction. There is absolutely no doubt that some of the sites, not all of them, that were downloaded were child pornography. That's what he pled guilty to with respect to Article 134. Yes, but that's not in front of us. If you had appealed to 134, that would be in front of us. The only appeal here, however, is 92. That's correct. But that doesn't deny that even if you're correct that the Article 92 charge, the finding was somehow limited to what was specified in the specification, the pornography. Nonetheless, the child pornography was also a finding of the court. It's beyond a reasonable doubt that some of those images were child pornography, and there is no reason that this conviction record shouldn't be found to indicate that the images that were downloaded ‑‑ If you had appealed 134, I would be willing to look at 134. There are various reasons why it was set aside, and the I.J. says I can't look at it. It's not relevant. The I.J., based on his interpretation of the law at the time, if, for example, this Court were to find that the ‑‑ you couldn't import the finding beyond a reasonable doubt from 134 charge under the modified categorical approach, the Court should still remand on an open record because the Board could still determine that, based on the change in law since this conviction, it could revisit the Article 134. The I.J. and the BIA did rely on the 134 evidence, right? Yes. They have a little different theory than you did then. Yes. They didn't feel a need to go beyond that theory. All they had ‑‑ they had a finding beyond a reasonable doubt that some of the images in the Article 92 charge were child pornography, and that was all that the I.J. and the Board needed under the modified categorical approach, and they're correct in that.  Thank you, Your Honor. Thank you. Well, we've taken both sides over. Would you like two minutes to respond? Yes, Your Honor. I probably do a little less than that, but I'm happy to answer any questions. First, in response to Judge Paez's question, it's at page 937 where Aguilamonte says that even if the indictment alleges a fact and the defendant admits it, that's not enough. It has to be necessary. And I won't rehearse my arguments about what's necessary for the Article 92. It's obviously the court understands that. The second thing is that counsel said that we're mounting a collateral attack to the prior 134 conviction. That's not the case at all. We're just saying that it involved a different standard, not that it was somehow insufficient under military law, although I would point out again that if they had wanted to, they could have filed a charge that incorporated the actual elements of 2252 under military law. So they could have actually charged it the way that it exists in Federal law. And then, actually, I don't have any further points that I want to make, but I'm happy to answer any questions that the Court has. Do we ever know what happened to Mr. Toothurst? I know that he was mistakenly deported to Honduras, but Mr. Landry is the one who's in touch with him. That's not important. But somebody is in touch with him? Yes. Mr. Landry. In fact, in the motion to allow him to appear by telephone, he said that he communicates with him via e-mail. Okay. Thank you, Your Honor. Thank both sides for your arguments. Aguilar-Tricios v. Holder submitted for decision, and we're now in adjournment. All rise.
judges: Fletcher, Paez, Bybee